IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL MANGIARDI, : | |
| : | |
| Petitioner : | |
| : | CIVIL NO. 4:09-CV-1602 |
| : | |
| v. : | (Judge McClure) |
| : | |
| FEDERAL BUREAU OF : | |
| PRISONS, : | |
| : | |
| Respondent : | |

## **MEMORANDUM**

November 30, 2009

Petitioner Paul Mangiardi ("Petitioner" or "Mangiardi"), an inmate confined at the Federal Prison Camp at the Federal Correctional Institution at Schuylkill ("FPC Schuylkill") in Minersville, Pennsylvania, initiated the above action *pro se* by filing a petition for writ of habeas corpus ("petition") under 28 U.S.C. § 2241. He challenges the Federal Bureau of Prisons ("BOP")'s determination that he is ineligible to participate in the Elderly Offender Home Detention Pilot Program ("EOHDPP") authorized by the Second Chance Act ("SCA"). He also claims that the BOP has failed to award him with credit for all of the Good Conduct Time ("GCT") he has earned. The petition is fully briefed and ripe for review.

**BACKGROUND**

**I.    Factual and Procedural Background**

On December 10, 1998, the United States District Court for the Middle District of Pennsylvania sentenced Mangiardi to an aggregated term of 151 months incarceration for violating 18 U.S.C. § 371, Conspiracy, and 18 U.S.C. § 1341, Mail Fraud.  (Painter Decl., Rec. Doc. No. 8-2 at 3 ¶ 3; Public Info. Inmate Data, Rec. Doc. No. 8-2 at 9.)  On April 24, 2000, Mangiardi self surrendered to BOP authorities at the Federal Correctional Institution in Fort Dix, New Jersey, for the service of his federal sentence.  (Rec. Doc. No. 8-2 at 3 ¶ 4.)  He received one (1) day of prior custody credit for November 17, 1995.  (*Id.*)  His projected release date is April 10, 2011, via good conduct time release.  (*Id.* ¶ 3.)

Mangiardi makes two claims in his petition.  First, he claims that the BOP's determination that his Good Conduct Time ("GCT") should not be considered in determining his eligibility for participation in the EOHDPP is inconsistent with the provisions of the SCA.  (Rec. Doc. No. 1 ¶¶ 4-10.)  His second claim is that the BOP failed to award him GCT for work he performed assisting in flood relief in Gilberton, Pennsylvania and for extra work he performed in the chapel area.  (*Id.* ¶ 11.)  As relief, Mangiardi requests that his GCT be included in considering his eligibility for release to home confinement through the EOHDPP and that this Court direct his

immediate release to home confinement. (*Id.* ¶ 16.)

Service of the petition was directed by Order dated October 6, 2009. (Rec. Doc. No. 7.) On October 26, 2009, Respondent filed an answer to the petition, accompanied by declarations of Richard Painter, a BOP Case Manager at FPC Schuylkill, and Adam J. Ackley, a BOP Attorney Advisor at the Consolidated Legal Center, in Allenwood, Pennsylvania, several exhibits, and a copy of an opinion cited in the answer.[1] (Rec. Doc. No. 8.) Petitioner filed his reply on November 5, 2009. (Rec. Doc. No. 9.)

## II. Statutory Background

The SCA, which was signed into law on April 9, 2008, mandated that the Attorney General, in coordination with the Director of the BOP, create a federal prisoner reentry initiative. Pub. L. No. 110-199 (codified at 42 U.S.C. § 17541). Among these initiatives is the creation of the EOHDPP, to be conducted by the Attorney General, "to determine the effectiveness of removing eligible elderly

---

[1] Respondent submitted the following exhibits with the answer: Petitioner's Public Information Inmate Data as of October 8, 2009 (Rec. Doc. No. 8-2 at 7); a copy of BOP Operations Memorandum 003-2009 (5392), <u>Elderly Offender Home Detention Pilot Program</u> (*id.* at 13); a record of all BOP administrative remedies filed by Petitioner as of October 8, 2009 (Rec. Doc. No. 8-3 at 7-9); and copies of the following administrative remedies filed by Petitioner: administrative remedy 528620-F2 (*id.* at 11), and the response (*id.* at 13); administrative remedy appeal 528620-R1 (*id.* at 15), and the response (*id.* at 17); and administrative remedy appeal 528620-A1 (*id.* at 19), and the response (*id.* at 21).

3

offenders from a Bureau of Prisons facility and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced." 42 U.S.C. § 17541(g). The statute sets forth seven (7) criteria which an offender in BOP custody must meet in order to be considered an "eligible elderly offender." 42 U.S.C. § 17541(g)(5)(A)(i)-(vii).[2] At issue in this case is whether the BOP's

---

[2]Title 42 U.S.C. § 17541(g)(5)(A) provides as follows:

The term 'eligible elderly offender' means an offender in the custody of the Bureau of Prisons–

(i) who is not less than 65 years of age;

(ii) who is serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence (as defined in section 16 of Title 18), sex offense (as defined in section 16911(5) of this title), offense described in section 2332b(g)(5)(B) of Title 18, or offense under chapter 37 of Title 18, and has served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced;

(iii) who has not been convicted in the past of any Federal or State crime of violence, sex offense, or other offense described in clause (ii);

(iv) who has not been determined by the Bureau of Prisons, on the basis of information the Bureau uses to make custody classifications, and in the sole discretion of the Bureau, to have a history of violence, or of engaging in conduct constituting a sex offense or other offense described in clause (ii);

(continued...)

4

determination that GCT is not to be considered in determining whether an offender has "served the greater of 10 years or 75 percent of the term of imprisonment to which [he] was sentenced" is inconsistent with the SCA. *See* 42 U.S.C. § 17541(g)(5)(A)(ii).

## III. BOP Operations Memorandum

On February 5, 2009, the BOP issued Operations Memorandum 003-2009 (5392), <u>Elderly Offender Home Detention Pilot Program</u> ("BOP Memorandum"), to provide guidance to BOP staff for administering the pilot program authorized by the SCA at BOP facilities nationwide. (Painter Decl., Rec. Doc. No. 8-2 at 3 ¶ 5; BOP Memorandum, Rec. Doc. No. 8-2 at 13.) The BOP Memorandum specifies that, "[i]n accordance with the [Second Chance] Act, inmates must meet all statutory eligibility

---

²(...continued)
(v) who has not escaped, or attempted to escape, from a Bureau of Prisons institution;

(vi) with respect to whom the Bureau of Prisons has determined that release to home detention under this section will result in a substantial net reduction of costs to the Federal Government; and

(vii) who has been determined by the Bureau of Prisons to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.

5

criteria to participate in the pilot program." (Doc. 8-2 at 14 § 2 c.) Section 3 of the BOP Memorandum sets forth the statutory eligibility criteria, including age, eligibility based on length of sentence and amount of time served, eligibility based on the inmate's current and prior conviction(s), and history of escape from a Bureau Institution. (*Id.* at 15-18 § 3.) Section 4 of the BOP Memorandum, entitled "Inmate Assessment," provides as follows:

> If an inmate meets the statutory criteria described in Section 3, staff next consider whether the inmate is *appropriate* to participate in the pilot program. This determination is within the discretion of the Bureau staff, using sound correctional judgment, and based on information the Bureau uses to make classification and programming decisions, pursuant to Section 231(g)(5)(iv)[3] of the [Second Chance] Act.

(*Id.* at 18 § 4 (emphasis in original).) Section 4 of the Memorandum contains a "non-exhaustive list of factors to be considered for "each inmate who meets the statutory criteria", including history of violence; escape or attempted escape from a non-Bureau facility; factors which may make an inmate a flight risk, including federal, state, or local detainers, service of a concurrent sentence, or a Public Safety Factor of alien; service of terms for violations of supervised release or parole; custody classification scoring items that may indicate the inmate presents an unacceptable risk of committing further crimes or endangering persons in the community; institution

---

[3]Section 231(g)(5)(iv) of the SCA is codified at 42 U.S.C. § 17541(g)(5)(A)(iv). (*See supra* note 2.)

6

adjustment, including disciplinary action, which may indicate an inmate's inability or unwillingness to comply with conditions that would accompany home detention; medical or psychiatric issues; and any other issues deemed relevant to the inmate's ability to comply with conditions of participating in the pilot program. (*Id.* at 18-19 § 4.) The Memorandum provides that "[a]ny one factor, or combination of factors, may result in staff deciding the inmate is not appropriate to participate in the pilot program." (*Id.* at 19 § 4.) The entire packet of each inmate who is deemed as eligible for participation in the pilot program is reviewed by the BOP Central Office. (*Id.* at 19 § 5.) In addition, the Central Office staff determines whether the inmate's placement will result in a substantial net reduction of costs to the Federal Government. (*Id.*) If it is determined that there would be no substantial net reduction of costs to the Federal Government, the inmate is inappropriate to participate in the pilot program. (*Id.*)

**JURISDICTION**

Mangiardi seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Section 2241 "confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Coady v. Vaughn,* 251 F.3d 480, 484 (3d Cir. 2001). The federal habeas statute also requires that the petitioner be

7

in custody "under the conviction or sentence under attack at the time his petition is filed." *Lee v. Stickman,* 357 F.3d 338, 342 (3d Cir. 2004) (quoting *Maleng v. Cook,* 490 U.S. 488, 490-91 (1989)).

Section 2241, unlike other federal habeas statutes, "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Coady,* 251 F.3d at 485 (quoting 28 U.S.C. §§ 2241(a) and (c)(3)). Although the United States Court of Appeals for the Third Circuit has yet to clearly define the meaning of "execution" in this context, it has cited approvingly to holdings from other circuits finding that a petition filed under § 2241 properly challenges "'such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'" *Woodall v. Federal Bureau of Prisons,* 432 F.3d 235, 242 (3d Cir. 2005) (quoting *Jimian v. Nash,* 245 F.3d 144, 147 (2d Cir. 2001)).

It appears that no other court in the Third Circuit has been asked to decide whether § 2241 is the appropriate means for challenging the BOP's implementation of the EOHDPP authorized by the SCA. BOP inmates have filed petitions in other circuits requesting that their participation in the EOHDPP be compelled through a writ

8

of habeas corpus; however, those cases, with two exceptions[4], were dismissed for failure to exhaust administrative remedies. *See United States v. Moore*, 2009 WL 2970464 (M.D. Ala. Sept. 11, 2009); *Hoffenberg v. Warden, Fort Dix Prison*, 2009 WL 2778427 (D.N.J. August 31, 2009); *Stanko v. Rios*, 2009 WL 1303969 (D.Minn. May 8, 2009); *Broderick v. Chapman*, 2009 WL 1160129 (N.D. Tex. April 29, 2009); *Cox v. Hogsten*, 2009 WL 233884 (E.D. Ky. Jan. 30, 2009). The decisions disposing of the two petitions that were entertained do not contain any discussion as to the appropriateness of bringing the challenges under § 2241. *See Moore*, 2009 WL 2970464; *Stanko*, 2009 WL 1303969.

Mangiardi's issue, namely whether the BOP's determination that GCT should not be considered in determining an inmate's eligibility for participation in the EOHDPP is inconsistent with the SCA, appears to be one of first impression. His challenge implicates the computation of his sentence and/or the type of detention he is

---

[4]The Courts in *United States v. Moore*, 2009 WL 2970464 (M.D. Ala. Sept. 11, 2009) and *Stanko v. Rios*, 2009 WL 1303969 (D.Minn. May 8, 2009) decided the petitions before them on the merits. Petitioner Moore's request that he be deemed eligible to participate in the EOHDPP was denied because he did not meet the statutory requirements to be deemed eligible, and even if he had, the Court was not inclined to interfere with the Attorney General's authority to administer the pilot program. *See Moore*, 2009 WL 2970464, at *2. The *Stanko* Court determined that Stanko's claim that the EOHDPP is unconstitutional because it violates equal protection and it is a bill of attainder lacked merit and did not provide him with a basis for habeas relief. *See Stanko*, 2009 WL 1303969, at *6-7.

subjected to, and therefore, under the relevant authority in this Circuit, § 2241 would appear to be the appropriate means for asserting such a challenge. *See Woodall*, 432 F.3d at 242. This conclusion also is supported by the fact that the Third Circuit has determined that challenges to the BOP's implementation of other provisions of the SCA, such as challenges to decisions to exclude an inmate from release to a Residential Reentry Center ("RRC"), are appropriately raised under § 2241. *See Woodall*, 432 F.3d at 243-44. Accordingly, the Court finds that Mangiardi's challenge is properly addressed under § 2241.

**DISCUSSION**

**I.     Exhaustion of Administrative Remedies**

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts in the Third Circuit consistently have required a petitioner to exhaust his administrative remedies before filing a petition for a writ of habeas corpus. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981) (per curiam)); *e.g.*, *Callwood v. Enos*, 230 F.3d 627, 632 (3d Cir. 2000). The Third Circuit requires administrative exhaustion for habeas claims raised under § 2241 because "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial

resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citations omitted).

The BOP has a three-level Administrative Remedy Program that is available to inmates for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. Inmates first must informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined through the submission of a BP-9 form. *Id.* at § 542.14(a). If dissatisfied with the response, the inmate may appeal an adverse decision first to the Regional Office and then to the Central Office of the BOP. *Id.* at § 542.15(a). No administrative remedy appeal is considered to have been fully exhausted until it has been denied by the Central Office of the BOP. *Id.* If the inmate receives no response within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

As to Mangiardi's claim that the BOP failed to award him with GCT for work he performed assisting in flood relief in Gilberton, Pennsylvania and for extra work performed in the chapel area, the record of all BOP administrative remedies he filed as of October 8, 2009 shows that he has not filed any administrative remedies raising this

11

claim. (Ackley Decl., Rec. Doc. No. 8-3 at 3-4 ¶ 5; Public Info. Inmate Data, Rec. Doc. No. 8-3 at 7-9.) Mangiardi does not offer any explanation for his failure to even initiate the administrative remedy process with respect to this claim in his reply. (*See* Rec. Doc. No. 9.) Accordingly, this claim will be dismissed for failure to exhaust administrative remedies. *See Moscato*, 98 F.3d at 760.

As to his claim that the BOP's determination that his GCT should not be considered in determining his eligibility for participation in the EOHDPP is inconsistent with the SCA, on February 27, 2009, Mangiardi filed Administrative Remedy 528620-F1. (Ackley Decl., Rec. Doc. No. 8-3 at 4 ¶ 6.) In that remedy, he requested that FPC Schuylkill staff consider his earned GCT when calculating his eligibility for participation in the EOHDPP under the provisions of the SCA. (*Id.*) On the same date, Administrative Remedy 528620-F2 was rejected because Mangiardi failed to attempt informal resolution and failed to submit the correct number of attachments. (*Id.* ¶ 7.) However, Mangiardi was advised that he could re-submit his administrative remedy in the proper form within five (5) days from the date on the rejection notice. (*Id.*)

Thereafter, Mangiardi successfully filed Administrative Remedies 528620-F2, 528620-R1, and 528620-A1 with the warden of FPC Schuylkill, the Regional Office of the BOP, and the Central Office of the BOP, respectively. (*Id.* ¶¶ 8-13; Rec. Doc.

No. 8-3 at 11-21.) In each of these remedies, Mangiardi requested that his GCT be considered when determining his eligibility for participation in the EOHDPP under the provisions of the SCA. (*Id.*) Each remedy was denied based upon the determination that Mangiardi had not yet served the greater of ten (10) years or seventy-five (75) percent of his 151 month sentence, and thus was not eligible to participate in the EOHDPP. (*Id.*)

Based on the foregoing, Mangiardi successfully exhausted his administrative remedies with respect to his claim that the BOP's determination that his GCT should not be considered in determining his eligibility for participation in the EOHDPP is inconsistent with the provisions of the SCA. We now turn to an analysis of this claim.

**II.   Analysis**

The BOP determined that Mangiardi does not meet the statutory criteria to be eligible for participation in the EOHDPP. (*See* Rec. Doc. No. 8-3 at 13, 17, 21.) Specifically, the BOP determined that he has not yet served the greater of ten (10) years or seventy-five (75) percent of the term of imprisonment to which he was sentenced as required by 42 U.S.C. § 17541(g)(5)(A)(ii). (*See id*.) The BOP explains its determination as follows:

Mangiardi was sentenced on December 10, 1998 to a sixty (60) month term of imprisonment for violating 18 U.S.C. § 371, Conspiracy, and a 151 month term of

13

imprisonment for violating 18 U.S.C. § 1341, Mail Fraud. (Painter Decl., Rec. Doc. No. 8-2 at 3 ¶ 3; Public Info. Inmate Data, Rec. Doc. No. 8-2 at 9.) His multiple terms of imprisonment were aggregated to create a single 151 month term that commenced on April 24, 2000. (Painter Decl., Rec. Doc. No. 8-2 at 3 ¶¶ 3-4.) He received one (1) day of prior custody credit for November 17, 1995. (*Id.* ¶ 4.) Seventy-five (75) percent of Mangiardi's 151 month term of imprisonment to which he was sentenced is 113 months and eight (8) days, or approximately nine (9) years, five (5) months, and eight (8) days. (*See id.* at 4 ¶ 8.) Therefore, in his case, the greater of ten (10) years or seventy-five (75) percent of the term of imprisonment to which he was sentenced would be ten (10) years. (*See id.*) At the time the instant petition was filed on August 20, 2009, Mangiardi had only served nine (9) years, three (3) months, and twenty-nine (29) days. (*See id.*) Mangiardi will not have served ten (10) years until April 23, 2010.[5] (*See id.*)

In responding to Mangiardi's appeal to the Regional Office of the BOP on the basis that his GCT should have been considered in determining his eligibility, Regional Director Dodrill denied the appeal on the basis that Mangiardi had not yet served ten (10) years of the term to which he was sentenced. (*See* Rec. Doc. No. 8-3

---

[5]Incidentally, in his Declaration, Painter represents that, in anticipation of Mangiardi's potential eligibility for the EOHDPP as of April 23, 2010, he has initiated the process of determining his eligibility. (Painter Decl., Rec. Doc. No. 8-2 at 4 ¶ 9.)

at 17.) Dodrill further noted, "[t]here is no provision in the Second Chance Act which requires GCT to reduce the service requirement for eligibility." (*See id.*) In denying Mangiardi's appeal to the Central Office of the BOP, Administrator Watts observed that Mangiardi is eligible to receive fifty-four (54) days of GCT per year based on the fact that his sentence was imposed under the Sentence Reform Act of 1984. (*See id.* at 21.) He explained that, because these days are deducted from the end of the sentence and are never served, they cannot be considered in determining an inmate's eligibility for participation in the EOHDPP. (*See id.*)

Mangiardi disputes the BOP's determination that there is no provision in the SCA requiring a consideration of his GCT in determining whether he has "served the greater of 10 years or 75% of the term of imprisonment to which [he] was sentenced." *See* 42 U.S.C. § 17541(g)(5)(A)(ii). Specifically, he contends that the guidance contained in the BOP Memorandum for implementing the EOHDPP is inconsistent with legislative intent. He also asserts that if the BOP included his GCT in its determination, he would be eligible for participation in the EOHDPP, and thus the BOP's refusal to consider his GCT constitutes a deprivation of his liberty interest without due process of law. The Court will examine each of these arguments in turn.

### A. Legislative Intent

Mangiardi contends that Congress intended that GCT be considered when it

15

enacted the elderly provisions of the SCA. He points to Congress's previous passage of the Sentence Reform Act of 1984, under which inmates receive fifty-four (54) days of GCT for every year served, as evidence that Congress intended that elderly inmates would benefit from their accumulated GCT in the process of determining their eligibility for participation in the EOHDPP. (*See* Rec. Doc. No. 9 at 3.)

Mangiardi's issue is one of statutory interpretation. In order to determine whether Congress intended that GCT be considered in determining an inmate's eligibility for participation in the EOHDPP, it is necessary to first examine the plain language of the portion of the SCA at issue here, which provides that an offender must have "served the greater of 10 years or 75% of the term of imprisonment *to which the offender was sentenced.*" 42 U.S.C. § 17541(g)(5)(A)(ii) (emphasis added). The phrase "term of imprisonment to which the offender was sentenced" unambiguously refers to the term imposed by the sentencing court. As such, the definition of that phrase in the BOP Memorandum as "the term of imprisonment imposed by the sentencing court, whether stated in days, months, or years" is consistent with the language of the statute. (BOP Memorandum, Rec. Doc. No. 8-2 at 16 § 3 b.(1).)

Moreover, GCT is not part of the term imposed by the sentencing court. Rather, GCT days are never served, but are deducted from an inmate's statutory

16

release date to establish a projected GCT Release Date. (*See* Rec. Doc. No. 8-3 at 21.)
Therefore, the language of the statute itself does not reflect an intention by Congress
that GCT days be included in determining whether an inmate has served the requisite
time to be eligible for participation in the EOHDPP. "Where the statutory language is
plain and unambiguous, further inquiry is not required." *Rosenberg v. XM Ventures*,
274 F.3d 137, 141 (3d Cir. 2001). Here, the plain language of 42 U.S.C. §
17541(g)(5)(A)(ii) is unambiguous, and therefore, the BOP's decision not to include
GCT in determining an inmate's eligibility for participation in the EOHDPP is
consistent with the statute.[6]

### B. Liberty Interest in GCT

With regard to Mangiardi's argument that the BOP's refusal to consider his
GCT constitutes a deprivation of his liberty interest in his GCT without due process of

---

[6]Mangiardi argues that the reference in the BOP Memorandum to an "Institution adjustment" allows the BOP to consider GCT in determining an inmate's eligibility for participation in the EOHDPP. (*See* Rec. Doc. No. 9 at 3-4.) "Institution adjustment" is one of the factors the BOP considers in determining whether an inmate is *appropriate* for participation in the EOHDPP. (*See* Rec. Doc. No. 8-2 at 19 § 4 g.) These factors only are reached if an inmate has been determined to meet the statutory requirements for eligibility set forth in Section 3 of the BOP Memorandum. (*See id.* at 18 §§ 3, 4.) Accordingly, in Mangiardi's case, where he does not meet the statutory requirements because he has not served the greater part of ten (10) years or seventy-five (75) percent of his sentence, the "Institution adjustment" factor does not apply to him.

17

law, he is correct that federal inmates have a liberty interest in GCT. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991). However, he has not been deprived of his GCT. The record reflects that his GCT has been used to determine his projected release date of April 10, 2011, via good conduct time release. (*See* Public Info. Inmate Data, Rec. Doc. No. 8-2 at 7.)

**CONCLUSION**

For the foregoing reasons, this Court concludes that it cannot grant Mangiardi's request that he be deemed eligible for participation in the EOHDPP and be immediately released to home confinement. Even if Mangiardi met the statutory requirements for eligibility, this Court could not provide him with the relief he requests in the form of directing his immediate release under the EOHDPP. The BOP still would need to determine whether Mangiardi is *appropriate* for participation by examining the factors set forth in Section 4 of the BOP Memorandum and by considering whether his placement would result in a substantial net reduction of costs to the Federal Government. (*See* Rec. Doc. No. 8-2 at 18-19 §§ 4, 5.) It would be inappropriate for this Court to make these determinations where the SCA specifically delegates authority to the Attorney General to administer the EOHDPP. Accordingly, the petition for writ of habeas corpus (Rec. Doc. No. 1) will be denied. An appropriate Order will enter.

        s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAUL MANGIARDI,       :
      :

|  |  |
|---|---|
| Petitioner | : |
|  | : CIVIL NO. 4:09-CV-1602 |
|  | : |
| v. | : (Judge McClure) |
|  | : |
| FEDERAL BUREAU OF PRISONS, | : |
|  | : |
| Respondent | : |

# ORDER

November 30, 2009

**AND NOW,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus (Rec. Doc. No. 1) is **DENIED**.

2. The Clerk of Court is directed to **CLOSE** this case.

        s/ James F. McClure, Jr.
        JAMES F. McCLURE, JR.
        United States District Judge